**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:10cv211**

| | | |
|---|---|---|
| **RONALD E. PATTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OF** |
| **vs.** | ) | **DECISION AND ORDER** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary

Judgment [Doc. 10] and the Defendant's Motion for Summary Judgment.

[Doc. 12].

**I.    PROCEDURAL HISTORY**

Plaintiff Ronald E. Patton filed an application for a period of disability

and disability insurance benefits on September 21, 2004 alleging that he had

become disabled as of May 19, 1999. [Transcript ("T.") 117]. The Plaintiff's

application was denied initially and on reconsideration. [T. 103-06, 111-14].

A hearing was held before Administrative Law Judge ("ALJ") Kevin F. Foley

on June 18, 2008. [T. 67-97]. On August 21, 2008, the ALJ issued a decision

denying the Plaintiff benefits. [T. 25-38].    The Appeals Council accepted

additional evidence but denied the Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  [T. 6-9].  The Plaintiff has exhausted his available administrative remedies, and this case is now ripe for review.  42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  The Court does not review a final decision of the Commissioner de novo.  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. § 405(g).  The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III.    THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process.   20 C.F.R. §§ 404.1520, 416.920.   If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant.  20 C.F.R. §§ 404.1520, 416.920.  Second, the claimant must show a severe impairment.  If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled.  Id.  Third, if the impairment meets

or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV.    FACTS AS STATED IN THE RECORD

Plaintiff was 55 years old at the time of his hearing before the ALJ. [T. 67, 117]. He had completed the tenth grade. [T. 70]. Plaintiff was in prison from 1984 to 2004 and again from 2007 through the date of the hearing. Thus, Plaintiff was financially ineligible for benefits at all times after his alleged date of onset except for the three-year period from September 21, 2004 to September 27, 2007. [T. 69]. It is only for this period that he seeks benefits.[1]

---

[1]The record indicates that Plaintiff had received Social Security disability benefits for a period of time prior to his alleged onset date. The record does not indicate what his disabling condition was at that time. While the record suggests that these payments were stopped due to his incarceration, it does not indicate whether benefits ceased for

At the ALJ hearing, Plaintiff testified that he suffers from "seizures," which did not involve him "passing out" but rather "just forget[ting] where I am." [T. 73]. He claimed to only "drink a beer. . .every now and then." [T. 76]. He testified that he sometimes heard voices and would take Haldol on occasions when the voices got "real bad." [Id.]. It is not clear whether Plaintiff suffered such hallucinations during the relevant three-year period. [See T. 76-77]. He further testified that he experiences dizziness two or three times a week. [T. 84].

Plaintiff testified that he had been prescribed Seroquel to take at night, but that he did not always take it because he was homeless and did not always have a place to sleep. [T. 78]. He reported that people irritate him and cause him trouble, so he tries to stay away from them. [T. 78-79].

Plaintiff testified that he injured his leg in a motor vehicle accident in April 2005. He reported lasting damage from that injury, including constant swelling in his leg, such that he could "hardly stand or walk," and sharp pains in his neck. He further reported that his hands often "lock up" on him. [T. 79-80].

---

any other reason as well.

During the relevant three-year period in which he was not incarcerated, Plaintiff worked briefly at a Krystal Restaurant, and held other jobs of very short duration. He stated that he was fired from each but did not know why. He denied that his problems getting along with people caused these terminations. [T. 80-81]. Plaintiff reported that he also did yard work through Labor Finders. [T. 88].

At the time of the hearing, Plaintiff had worked in the prison kitchen for about a month. [T. 82]. He reported that this job requires him to stand for several hours at a time. [Id.]. He said he did not perform any heavy lifting in this job due to arthritis in his arms. [T. 83].

Both during and between his incarcerations, Plaintiff was diagnosed with a variety of mental impairments, and received sporadic mental health treatment. In August 2001, Anthony Weisenberger, M.D. evaluated Plaintiff for the Department of Correction because he was taking prescription psychotropic medications (Buspar and Remeron) upon admission. [T. 245]. He diagnosed Axis I disorders of anxiety and history of alcohol and cocaine dependence on initial evaluation. [T. 244]. During a later incarceration, Barbara Davenport, M.D. performed another admission evaluation. Dr. Davenport noted that Plaintiff was an inconsistent historian, having described

auditory and visual hallucinations and multiple personalities to her colleague, but not manifesting such symptoms to her. She diagnosed Depressive Disorder NOS and polysubstance dependence at Axis I, and Personality Disorder NOS at Axis II. [T. 404].

Interspersed between those one-time medical evaluations were various follow-ups and counseling sessions. The prison mental health counselors who treated Plaintiff on a recurring basis stated he had "no Axis I" pathology. [T. 202, 214]. Instead they noted "characterological problems," which connote no mental impairment, and exaggeration of symptoms motivated by "secondary gain" and "drug seeking." [T. 198, 201, 208, 399, 385]. It was noted that Plaintiff had the lowest level of patient acuity on the DOC's evaluation scale. [T. 204]. Plaintiff's mental health appointments in prison were required for him to continue his medication regime, but records indicate that he resented the appointments except when motivated to use them as a chance to seek transfers or other benefits, and he consistently reported having no problems. [T. 204, 192-252, 365-421]. He also routinely failed to comply with prescribed treatment. [T. 207, 208, 211, 214, 215, 367].

On April 18, 2005, during the three-year period between incarcerations, Plaintiff was evaluated by Loretta O'Hanlon, a psychiatric nurse practitioner with New Vistas Behavioral Health Services. She diagnosed Plaintiff as having Bipolar I Disorder, mixed moderate; polysubstance dependence, in remission; antisocial personality disorder; hypertensive disease; esophageal reflux and possible neurological/renal/hepatic problems. She noted his vacillation when questioned about drinking, expressed doubt as to his expressed commitment to abstain from alcohol, and noted that he made limited eye contact. [T. 354, 352].

## V.    THE ALJ'S DECISION

On August 21, 2008, the ALJ issued a decision denying the Plaintiff benefits. [T. 25-38]. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff had not engaged in any substantial gainful activity since September 7, 2004, his application date. [T. 27]. The ALJ then determined that Plaintiff had the following severe impairments: leg pain, anxiety, anti-social personality disorder, and polysubstance disorder. [T. 27]. The ALJ concluded that his impairments did not meet or equal a listing. [T. 29]. He then determined that Plaintiff retained the residual functional capacity (RFC) to perform a limited range medium work, with restrictions from working around

unprotected heights and dangerous machinery, and limitations to simple, routine repetitive tasks and working with things as opposed to people. [T. 30]. He found that Plaintiff was unable to perform his past relevant work as a landscaper/park worker. [T. 36]. The ALJ determined that jobs did exist in significant numbers that the Plaintiff could perform. [T. 37]. Accordingly, the ALJ concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from the application date of September 7, 2004. [T. 38].

## VI.    DISCUSSION

On appeal, Plaintiff challenges the ALJ's evaluation of his mental impairments, his residual functional capacity, and the vocational evidence presented at the hearing. For the reasons detailed below, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff was not disabled.

## A.    The ALJ's evaluation of Plaintiff's mental impairments followed applicable law and is supported by substantial evidence.

### 1.    Application of the Special Technique

Plaintiff first argues that the ALJ provided inadequate findings in support of his assessment of the severity of Plaintiff's mental impairments under the "special technique" set forth in 20 C.F.R. § 416.920a. [Doc. 10-1 at 5-6]. Pursuant to the special technique, the ALJ must identify "the significant

history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairments." 20 C.F.R. § 416.920a (e)(2). The ALJ also must include a specific finding as to the degree of limitation in each of the four broad functional areas set forth in the regulations (the "paragraph B" criteria): activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Id.

Throughout his decision, the ALJ provided a thorough account of the history and treatment of Plaintiff's mental impairments, including relevant examination/clinical findings from the North Carolina Department of Correction, ABCCM Medical Ministry, Jennifer Zeisz, Ph.D., Joseph S. Wolyniak, M.D., and John P. Holt, M.D., as well as the Plaintiff's hearing testimony.[2] [T. 27-29, 31-36]. The ALJ then rated Plaintiff's degree of limitation in the four functional areas, finding that he had "mild" restriction in activities of daily living; "moderate" difficulties in social functioning; "moderate"

---

[2]Plaintiff appears to fault the ALJ for not placing this discussion in the particular section of his decision where he addressed the paragraph B criteria. [Doc. 10-1 at 5-6]. The regulations, however, do not require the ALJ to format or order his decision in a particular manner, so long as the ALJ provides a sufficient explanation of his findings to permit a meaningful review. See Moore v. Astrue, No. 2:09cv549, 2010 WL 3394657, at *6 n.12 (E.D.Va. Jul. 27, 2010); Finley v. Astrue, No. 5:08-CV-209-D(1), 2009 WL 2489264, at *10 (E.D.N.C. Aug. 13, 2009). In any event, Plaintiff has not demonstrated any prejudice from the arrangement of the ALJ's decision.

limitation in concentration, persistence, or pace; and no episodes of decomposition. [T. 30]. These findings are supported by substantial evidence and demonstrate that the ALJ's decision complied with the special technique required by the regulations. Plaintiff's argument that the ALJ failed to make adequate findings in his evaluation of Plaintiff's mental health conditions is therefore without merit.

### 2. Step three of the sequential evaluation

Next, Plaintiff contends that the ALJ failed to evaluate whether his mental impairments met or equaled any of the listed impairments. [Doc. 10-1 at 7]. This argument, too, must be rejected.

The ALJ specifically stated that he considered whether Plaintiff's mental impairments (either alone or in combination) met or equaled Listing 12.06, Anxiety Related Disorders, or Listing 12.08, Personality Disorders. [T. 29]. The ALJ, however, found that Plaintiff had only *mild* restrictions in activities of daily living; *moderate* restrictions in social functioning and concentration, persistence, or pace; and *no* episodes of decomposition. [Tr 30]. Accordingly, the ALJ properly concluded that Plaintiff's impairments did not meet or equal either of these Listings. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.06, 12.08. There is substantial evidence to support these findings.

Accordingly, the Court finds no error in the ALJ's findings at this step of the sequential evaluation.

### 3.    Assessment of RFC for mental and physical work functions

Plaintiff next argues that the ALJ erred in his assessment of Plaintiff's residual functional capacity (RFC).  Specifically, he argues that the ALJ's credibility determination was based entirely on mistaken facts, and that the ALJ failed to account for Plaintiff's limitations in concentration when crafting his RFC.

### a.    Credibility

The RFC assessment must be based on *all* of the relevant evidence in the case record, including "[e]ffects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  SSR 96-8p, 1996 WL 374184, at *5.  Upon a showing of "objective medical evidence showing the existence of a medical impairment(s) . . .which could reasonably be expected to produce the pain or other symptoms alleged,"  then the ALJ must then evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects his ability to work." Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996).

Having found severe conditions that reasonably could be expected to cause the physical and mental limitations which Plaintiff claims, the ALJ went on to discuss the medical findings of record, as well as Plaintiff's testimony regarding the side effects of his medications, his work activities, and activities of daily living. [T. 31-35]. The ALJ identified numerous inconsistencies between Plaintiff's testimony and medical findings, as well as between Plaintiff's claims to his health care providers and their objective findings within the same record. He noted the providers' doubts about Plaintiff's reliability in recounting symptoms to obtain treatment. He also noted many occasions on which Plaintiff claimed to have no medical problems, and when providers found no problems in spite of Plaintiff's claims to the contrary. He further noted providers' observations that he was "manipulative" and non-compliant with treatment [T. 32-33], evidence which is certainly relevant to a credibility assessment. See McKenney v. Apfel, 38 F.Supp.2d 1249, 1259 (D. Kan. 1999) (citing Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991)).

Additionally, the ALJ noted that in spite of claims of disabling pain, Plaintiff spent his free time lifting weights [T. 34, 35]; he enjoyed working in the kitchen [T. 34]; he held various other positions while in prison, such as cart server, baker, washer, labor service work crew member and road squad

member; and he held short-term jobs and performed yard work when out of prison. [T. 35]. These findings provide substantial evidence to support the ALJ's adverse finding regarding Plaintiff's credibility.

### b. Assessment of Mental Limitations in the RFC

Plaintiff next argues that the ALJ erred by not directly including his findings of moderate limitations in social functioning and concentration, persistence, or pace in his finding regarding the Plaintiff's RFC or in his hypothetical questions to the vocational expert (VE). [Doc. 10-1 at 8]. This argument, too, is without merit.

In determining the severity of a claimant's mental impairment at step two, the ALJ must consider the claimant's limitations in the areas of (1) activities of daily living, (2) social functioning, and (3) concentration, persistence, and pace ("the paragraph B factors"). See 20 C.F.R. §§ 404.1520a(d), 416.920a(d); SSR 96-8p. As Judge Howell recently explained, however:

> [W]hen an ALJ reaches steps four and five of the sequential evaluation process, he must assess the claimant's RFC, since the [paragraph B] factors do not indicate the work-related activities the claimant will have difficulty performing. An adjudicator must, however, assess the claimant's mental RFC by translating the findings that were developed through the evaluation of the [paragraph B] factors into

> specific work-related limitations. Thus, the findings an
> ALJ makes as to the claimant's (1) activities of daily
> living, (2) social functioning, and (3) concentration,
> persistence, and pace need not be included in the
> ALJ's RFC assessment.

Grubby v. Astrue, 2010 WL 5553677 at *13 (W.D.N.C. Nov. 18, 2010)

(citations omitted). Here, the ALJ appropriately translated his paragraph B

findings into work-related limitations in his RFC finding and hypothetical to the

VE. The ALJ specifically accounted for the moderate restriction in

concentration, persistence, or pace by limiting Plaintiff to "simple, routine,

repetitive tasks." [T. 30]. See Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th

Cir. 2007). Plaintiff fails to demonstrate any greater limitations in

concentration than are accounted for in the RFC finding for "simple, routine

repetitive tasks." Therefore, this assignment of error must fail.

### c.    Weighing opinion evidence

Plaintiff next argues that the ALJ erred in rejecting the opinions of

Jennifer Zeisz, Ph.D. and Joseph S. Wolyniak, M.D. in assessing his mental

limitations.

Regulations dictate the ALJ's evaluation of medical source evidence:

> Regardless of its source, we will evaluate every
> medical opinion we receive. Unless we give a treating
> source's opinion controlling weight under paragraph
> (d)(2) of this section, we consider all of the following

> factors in deciding the weight we give to any medical opinion: (1) Examining relationship; (2) Treatment relationship; (i) Length of the treatment relationship and the frequency of examination.(ii) Nature and extent of the treatment relationship.

20 C.F.R. § 404.1527(d). Among the elements the ALJ may consider in weighing opinions are supportability of the opinion through medical signs and laboratory findings, and consistency with the record as a whole. See 20 C.F.R. § 404.1527.

No treating physician addressed Plaintiff's mental impairments in terms of limitations they imposed on work functions. During a one-time evaluation [T. 267-71], Dr. Zeisz assessed the Plaintiff with Mixed Personality Disorder with Paranoid Features at Axis II, and with Axis I problems of Alcohol Abuse NOS and "Bipolar Disorder by diagnostic history." [T. 270]. She opined that he would get into conflicts with co-workers and supervisors due to his strong paranoid tendencies, could understand, remember and carry out only very simple directions, and was unlikely to improve due to the intransigent nature of personality disorders and his lack of coping skills. [T. 270-71]. She qualified these findings, however, by noting that "during the interview it was not possible to determine the validity of Mr. Patton's mental health symptoms," and by noting inconsistencies in Plaintiff's prior reports. [T. 267]. In light of

these qualifications, the ALJ did not err in refusing to attribute any significant weight to Dr. Zeisz's opinions.  See 20 C.F.R. § 404.1527(d)(2)(ii)(3).

The Court similarly finds no error in the ALJ's evaluation of Dr. Wolyniak's findings.  Dr. Wolyniak performed a consultative physical examination of the Plaintiff.  He did not perform any mental status examination and made no mental health diagnoses in the course of his evaluation.  Under the "Psychiatric" section of his report, he simply quoted from the Plaintiff and prison records in nothing that there were "multiple psychiatric concerns including anxiety, manic depression, DD6 stated bipolar disorder and paranoid schizophrenia."  [T. 272, 275, 277].  Dr. Wolyniak noted no restrictions on activities of daily living.  [T. 274].  Further, he described Plaintiff's reliability as "uncertain" and noted his poor effort on range of motion testing and other elements of the physical examination. [T. 276-77].  In the absence of any objective testing of Plaintiff's mental status or diagnoses of any mental impairments, the ALJ did not err in his assessment of Dr. Wolyniak's findings.

**B.    The ALJ followed applicable law in his use of vocational expert opinion evidence and his findings at step five are supported by substantial evidence.**

At step five, the burden of proof shifts to the Commissioner to demonstrate that given Plaintiff's age, education, and residual functional

17

capacity, jobs exist in significant numbers in the national economy that the Plaintiff can perform. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). The Commissioner may meet his burden of proof through the use of evidence from a vocational expert (VE), and the ALJ may also consult reliable job information such as the Dictionary of Occupational Titles. See 20 C.F.R. § 404.1566 (d), (e). Any conflict between the two must be resolved through the testimony of the VE. SSR 00-4p. For a VE's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, Chester v. Mathews, 403 F. Supp. 110 (D. Md. 1975), and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments. Stephens v. Secretary of Health, Education and Welfare, 603 F.2d 36 (8th Cir. 1979).

In the present case, the ALJ posed certain hypothetical questions, whereupon the VE testified that a person of the Plaintiff's age, work experience, education, and residual functional capacity could work as a night business cleaner, vending machine attendant, and laundry folder. [T. 90-91].

Plaintiff complains that the ALJ's hypothetical question incorporating a limitation to work with "things not people" was so impermissibly vague that the Defendant failed to prove that a person with Plaintiff's limited tolerance for

supervision could perform them.  Plaintiff further claims that the VE testimony regarding jobs involving "things not people" is fundamentally flawed because no job could possible fulfill such a requirement.  [Doc. 10-1 at 13].

The restriction to work involving "things and not people" is a common formulation used by ALJs to address impairments in social functioning.  See, e.g., Yensick v. Barnhart, 245 F. App'x 176, 179 (3d Cir. 2007); Bragg v. Astrue, No. 2:09CV65, 2010 WL 3464004, at *22 (N.D. W.Va. Jul. 15, 2010); Bass v. Astrue, No. 1:06cv591, 2008 WL 3413299, at *3 (M.D.N.C. Aug. 8, 2008).  As commonly employed, this limitation does not preclude *all* supervision.  The VE reflected the common understanding of this limitation in responding to the ALJ's questions, when she stated that she understood the ALJ's hypothetical to allow for jobs where "there's some supervision, but people usually work alone." [T. 90].  The ALJ did not correct the VE as to the meaning of this limitation or otherwise impose further restriction on social interaction that would raise any question of ambiguity in the VE's testimony. [T. 90-91].  For these reasons neither the ALJ's hypotheticals nor the VE's testimony were impermissibly vague.  This assignment of error is without merit.

To the extent that Plaintiff contends that the VE's testimony was inconsistent with the DOT, the Court also finds no error. The ALJ complied with SSR 00-4p by eliciting testimony from the VE that her testimony was consistent with the information contained in the DOT. [T. 94-95]. <u>See</u> SSR 00-4p, 2000 WL 1898704, at *4. Plaintiff's counsel cross-examined the VE regarding the impact of certain non-exertional limitations on the jobs she identified, but this examination revealed no evidence of any actual conflict between the VE's testimony and the DOT that would have required resolution by the ALJ under SSR 00-4p. In the absence of a demonstrated conflict, remand is not required. <u>See</u> <u>Justin v. Massanari</u>, 20 F. App'x 158, 160 (4th Cir. 2001); <u>Lancaster v. Comm'r of Soc. Sec.</u>, 228 F. App'x 563 (6th Cir. 2007).

## VII.  CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards, and that there is substantial evidence to support the ALJ's finding of no disability through the date of his decision.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 12] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 10] is **DENIED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: December 15, 2011

Martin Reidinger
United States District Judge